UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE MARIE SILAS,

    Plaintiff,

v.                                            Case No. 8:18-cv-477-T-SPF

ANDREW M. SAUL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on September 15, 2014 (Tr. 168–71). The Commissioner denied Plaintiff's claim both initially and upon reconsideration (Tr. 90–93, 99–104). The ALJ held a hearing at which Plaintiff appeared and testified (Tr. 754–801). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and,

---

[1] Andrew M. Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

accordingly, denied Plaintiff's claim for benefits (Tr. 16–37). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## FACTUAL BACKGROUND AND THE ALJ'S DECISION

Plaintiff, who was born in 1968, claimed disability beginning September 13, 2014 (Tr. 183). Plaintiff obtained at least a high school education (Tr. 188). Plaintiff's past relevant work experience included work as a corrections officer (Tr. 188). Plaintiff alleged disability due to pulmonary embolism, asthma, fibromyalgia, lupus, leukocytosis, chronic sinusitis, polycystic ovarian disease, oligomenorrhea, and back pain (Tr. 65, 77).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since September 13, 2014, the alleged onset date (Tr. 21). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease, asthma, obesity, rheumatoid arthritis, fibromyalgia, gastroesophageal reflux disease (GERD), deep vein thrombosis with history of pulmonary emboli, depression and anxiety disorder (Tr. 21). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work except she could occasionally stoop, kneel, crouch, or crawl; could never

climb ladders, ropes or scaffolds; could occasionally climb ramps or stairs; should avoid exposure to hazards such as heights or machinery with moving parts; should avoid concentrated exposure to dusts, fumes, gases, odors, or poorly ventilated areas; and could frequently handle and finger with the upper extremities. Plaintiff was also limited to no production rate pace work and occasional changes in routine workplace setting (Tr. 23).

After considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work (Tr. 29). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy (Tr. 30). Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 31).

## **LEGAL STANDARD**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a

3

"sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.

*Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## **ANALYSIS**

Plaintiff raises three issues on appeal: (1) whether the ALJ properly considered Plaintiff's severe impairments of fibromyalgia and lupus at step two and three and of the sequential evaluation process and in his RFC assessment; (2) whether the ALJ properly considered Plaintiff's manipulative limitations in his RFC assessment; and (3) whether the ALJ properly evaluated Plaintiff's obesity.[2] For the reasons that follow, the ALJ's decision is affirmed.

**I.     Lupus**

Plaintiff first contends that at step two of the sequential evaluation process, the ALJ failed to consider Plaintiff's lupus as a severe impairment. Particularly, Plaintiff

---

[2] Plaintiff's arguments have been reordered to facilitate the Court's analysis.

5

argues that her testimony that she suffers from lupus is consistent with the objective evidence on record showing elevated C-Reactive protein (CRP) and positive ANA tests (Tr. 343, 346, 418–19, 478-527, 581, 750).[3] Further Plaintiff argues that her lupus appears as a diagnosis that causes significant limitations throughout the medical record. The Commissioner counters that the objective evidence does not establish that Plaintiff met the diagnostic criteria for lupus. Particularly, the Commissioner argues that the elevated C-reactive protein indicated inflammation but does not indicate the cause of the inflammation, and since Plaintiff had been diagnosed with an inflammatory disease—rheumatoid arthritis—the test results do not establish the diagnosis of lupus (Doc 29 at 24–25).

At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or

---

[3] A CRP test measures the level of CRP in an individual's blood. CRP is a protein made by the liver. It is sent into the bloodstream in response to inflammation. A CRP test may be used to find or monitor conditions that cause inflammation, including autoimmune disorders such as lupus or rheumatoid arthritis, and osteomyelitis. U.S. National Library of Medicine, *C-Reactive Protein (CRP) Test*, https://medlineplus.gov/lab-tests/c-reactive-protein-crp-test/(last visited September 4, 2019). Similarly, the ANA test is used to diagnose autoimmune disorders, including Systemic lupus erythematosus. United States National Library of Medicine, MedlinePlus, *Antinuclear Antibody Panel*, at https://medlineplus.gov/lab-tests/ana-antinuclear-antibody-test/(Last visited June 28, 2019).

normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An "impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Although an ALJ need not determine whether every alleged impairment is "severe" at step two, the ALJ must consider all impairments, regardless of their severity, in conjunction with one another in performing the latter steps of the sequential evaluation. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).

The ALJ's finding that Plaintiff's lupus is not a severe impairment is not supported by substantial evidence. At the hearing, Plaintiff testified that the biggest impairment that prevented her from work was joint pain caused by her lupus (Tr. 768). Plaintiff stated that she was taking drugs to control her joint pain, including Methotrexate, Gabapentin, Plaquenil (Hydroxychloroquine), and Mobic, among others (Tr. 776–777). These drugs are normally used in patients with lupus.[4] Plaintiff testified that during her lupus episodes her hands got red and swelled and that she had these episodes every few weeks for a few times a week (Tr. 773). In her memorandum, Plaintiff cites to various medical records noting that Plaintiff's ANA tests were positive, and C-Reactive Protein was elevated (343, 346, 419, 422, 459, 462, 540, 581). Plaintiff's treating physician, Dr. Katherin Welty, M.D., noted that although another physician had listed Plaintiff for rheumatoid arthritis,

---

[4] For example, Hydroxychloroquine is a drug used to treat SLE and rheumatoid arthritis in patients whose symptoms have not improved with other treatments. United States National Library of Medicine, MedlinePlus, https://medlineplus.gov/druginfo/meds/a601240.html. (Last visited June 28, 2019).

7

Plaintiff met the criteria for lupus and the medical notes show that Plaintiff suffers from bilateral hand pain from lupus (Tr. 419, 750). The record contains medical notes supporting Plaintiff's claim of limitations arising from her lupus, therefore, the ALJ erred by failing to consider Plaintiff's lupus as a severe impairment.

The ALJ's error at step two is, however, harmless. Notably, the finding of any severe impairment is enough to satisfy the ALJ's duty at step two, if the ALJ considers all impairments, regardless of their severity, in conjunction with one another in performing the latter steps of the sequential evaluation. *See Schink v. Commr. of Soc. Sec.*, No. 17-14992, ___ F.3d___, 2019 WL 4023639, at *15 (11th Cir. Aug. 27, 2019); *Tuggerson-Brown*, 572 F. App'x at 951.

Here, despite discounting the severity of Plaintiff's lupus, the ALJ's RFC analysis implicitly and explicitly discussed all of Plaintiff's alleged impairments and the effects of these impairments in Plaintiff's RFC. The ALJ explicitly noted that Plaintiff alleged disability arising from, among other things, fibromyalgia and lupus, and that she complained of swollen hands, chronic joint pain, and right-hand pain (Tr. 23). The ALJ found that the objective medical evidence did not support Plaintiff's allegations regarding the severity and intensity of her rheumatoid arthritis and fibromyalgia symptoms, which were not different from those argued by Plaintiff as lupus-related symptoms (Tr. 24).[5] For

---

[5] Lupus is sometimes called "the great imitator" because its symptoms are often the same symptoms of rheumatoid arthritis and fibromyalgia, among other illness. Joan Rooney, *Systemic Lupus Erythematosus: Unmasking a Great Imitator* (2005), available at https://journals.lww.com/nursing/Fulltext/2005/11000/Systemic_lupus_erythematos us__Unmasking_a_great.49.aspx (last visited September 25, 2019). Fatigue, fever, joint pain, stiffness and swelling, headaches, confusion, and memory loss are symptoms associated with lupus. Mayo Clinic, *Lupus*, available at

instances, the ALJ considered various medical notes from 2014 to 2016. The ALJ noted Plaintiff's complaints of joint stiffness, memory loss, myalgias, arthralgias, lack of concentration, fatigue, and pain in the hands and elbows. The ALJ also noted the existence of laboratory findings including positive ANA tests and of physical examinations revealing tenderness over the forearm and wrist joints and swelling of the metacarpophalangeal joints. However, the ALJ concluded that Plaintiff's physical exams show a normal range of motion, strength and tone, intact cranial nerves, no motor or sensory deficits, normal deep reflexes, and a normal gait and station (Tr. 24, 414–24, 427, 432, 437). In other words, the objective medical findings did not support Plaintiff's complaints of disabling pain.

In reaching his credibility determination, the ALJ also noted that in 2015 and 2016, Plaintiff was treated with pain medication for fibromyalgia and systemic involvement of connective tissue and that the medication was increased occasionally (Tr. 606–41). However, the ALJ concluded that Plaintiff's rheumatoid arthritis and fibromyalgia symptoms were well controlled by her medications. Further, the ALJ noted that no surgery, or other aggressive treatment, was required to treat Plaintiff's joint problems (Tr. 24–25, 338, 351). The ALJ properly articulated reasons to discount Plaintiff's complaints of pain associated with her rheumatoid arthritis, fibromyalgia, and lupus and his findings are supported by substantial evidence (Tr. 24–25). *See Wilson*, 284 at 1225 (noting that when the ALJ discredits the claimant's subjective testimony, the ALJ

---

https://www.mayoclinic.org/diseases-conditions/lupus/symptoms-causes/syc-20365789 (last visited September 25, 2019).

must articulate explicit and adequate reasons for doing so); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (stating that the Court will not disturb a clearly articulated credibility finding that has substantial supporting evidence in the record). Therefore, whether implicitly or explicitly, the ALJ considered Plaintiff's lupus at the later steps of the sequential evaluation process.[6]

## II. Fibromyalgia

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process because he failed to determine whether Plaintiff's fibromyalgia medically equaled a listing, articularly, Listing 14.09D. Social Security Ruling (SSR) 12-2p recognizes that fibromyalgia is not a listed impairment, therefore, the ALJ must determine whether fibromyalgia medically equals any listing. SSR 12-2p. The Eleventh Circuit, however, does not require the ALJ to mechanically recite the evidence leading to his determination at step three. *See Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). An ALJ's finding "as to whether a claimant meets a listed impairment may be implied from the record." *Kalishek v. Comm'r of Soc. Sec.,* 470 F. App'x 868, 870 (11th Cir.2012); *see also* 20 C.F.R. § 416.926(c) (requiring only that the ALJ "consider all evidence in [Plaintiff's] case record about [his] impairment and its effects on [him]" in determining whether ).

At step three of the sequential evaluation process, the ALJ found that

> [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

[6] In assessing Plaintiff's RFC, the ALJ also limited Plaintiff to perform no production rate pace work and with occasional changes in routine workplace setting (Tr. 23). These limitations properly account for any mental limitation associated with lupus such as lack of concentration and memory loss (Tr. 29). Plaintiff does not challenge the ALJ's assessment of Plaintiff's mental limitations.

10

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(Tr. 21). The ALJ further explained that

> Despite Plaintiff's "combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. No State agency reviewer/consultant/examiner has concluded that the claimant has an impairment severe enough to meet or equal a listing. No subsequent evidence has been submitted that would alter the previous conclusions that the claimant has no impairments severe enough to meet or equal a listing. No treating physician has concluded that the claimant has an impairment or combination thereof severe enough to meet or equal a listing.

(Tr. 21–22). The ALJ discussion at step three complied with the requirements at that stage of the sequential evaluation process.

Moreover, Plaintiff failed to show her impairments medically equaled Listing 14.09D. *See Keane v. Comm'r of Soc. Sec.,* 203 F. App'x 748, 751 (11th Cir. 2006) (upholding the ALJ's implicit decision that the claimant failed to establish that his impairment equaled a listing). To qualify for benefits by showing an unlisted impairment equals a listed impairment, Plaintiff must "present medical findings equal in severity to *all the criteria* for the one most similar listing." *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990) (emphasis added); 20 C.F.R. §§ 404.1526(a), 416.926(b)(2). Listing 14.09D identifies the following criteria for a claimant's impairment to meet or be the equivalence of inflammatory arthritis:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living
> 2. Limitation in maintaining social functioning

>    3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09D.

Here, even if Plaintiff established that her fibromyalgia caused repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs such as severe fatigue, fever, and malaise, the ALJ properly found that Plaintiff had no market limitation on her activities of daily living, maintaining social functioning, and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (Tr. 22). As stated by the Commissioner, the ALJ explicitly evaluated these categories when considering Listings 12.04 and 12.06 but found that Plaintiff did not have more than moderate limitations in any area (Tr. 22). Plaintiff does not challenge the ALJ's findings in this regard, therefore, Plaintiff has failed to establish that her fibromyalgia is medical equivalent to listing 14.09D.

Plaintiff also appears to argue that the ALJ erred by failing to consider the longitudinal information and the varying signs and symptoms of Plaintiff's fibromyalgia in assessing Plaintiff's RFC (Doc. 29 at 22). As discussed above, the ALJ properly evaluated Plaintiff's fibromyalgia in assessing Plaintiff's RFC, therefore, Plaintiff's argument is unavailing. Further, Plaintiff does not explain how her fibromyalgia caused greater limitations than the ALJ's RFC finding. *See Dougherty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001) ("The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits").

### III. Manipulative limitations

Plaintiff argues that the ALJ committed reversible error by failing to properly consider Plaintiff's manipulative limitations in his RFC assessment. Particularly, Plaintiff argues that the ALJ's finding that Plaintiff "can frequently handle and finger with the upper extremities" is contrary to the record, which supports a much more limited RFC (Tr. 23). Plaintiff cites to medical notes describing Plaintiff's hand pain an highlighting medical comments about setting up and aggressive regimen to control Plaintiff's issues with pain, swelling and stiffness in her hands (Tr. 267, 351, 750). Additionally, Plaintiff cites her testimony stating that when she had a lupus episode her hands got red and swelled and hurt constantly (Tr. 773, 781).

As discussed, the ALJ considered Plaintiff's complaints of pain—including hand pain, joint swelling, and stiffness—in assessing Plaintiff's RFC but found that the intensity of such conditions, as argued by Plaintiff, was not supported by the record. The Court had already determined that the ALJ's pain evaluation conforms to the Eleventh Circuit standard and that the ALJ's overall RFC assessment is supported by the record. Although Plaintiff claims that the evidence shows greater limitations related to Plaintiff's manipulative limitations than those recognized by the ALJ, the Court may not reweigh the evidence in this regard. *See Bloodsworth,* 703 F.2d at 1239.

Moreover, an independent review of the record shows that Plaintiff's testimony does not necessarily support her claim. Plaintiff testified that her hands hurt constantly (Tr. 781), but she also testified that she can write, type, and use her phone constantly (Tr. 781–82). With respect to her activities of daily living, she testified that she can do simple

household chores like washing dishes, preparing meals, and driving, and that her main limitation with performing these activities is back pain, not hand pain (Tr. 778). Overall, the Court finds that the ALJ properly accounted for Plaintiff's manipulative limitations on the RFC assessment. For the same reasons, the ALJ did not have to include greater limitations in the hypothetical posed to the VE. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

**IV.     Obesity**

Plaintiff next asserts that the ALJ failed to consider the impact of Plaintiff's obesity in her ability to work as required SSR 02-1p. Specifically, she argues that although the ALJ noted that he "considered the effects of obesity in this decision" (Tr. 28), it is unclear how he did it. In other words, Plaintiff argues that the ALJ failed to explain the effects of Plaintiff's obesity on her ability to work. The Commissioner counters that the ALJ adequately considered and evaluated Plaintiff's obesity at each relevant step of the disability evaluation.

An ALJ must consider obesity when assessing a claimant's overall medical condition. "Obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant "from doing past relevant work and other work that exists in significant numbers in the national economy.'" *Lewis v. Commr. of Soc. Sec.*, 487 F. App'x. 481, 483 (11th Cir. 2012) (citing SSR 02–1p). When obesity is identified as a medically determinable

impairment, the ALJ must consider "any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." SSR 02-1p.

A review of the record establishes that the ALJ properly considered Plaintiff's obesity as required by SSR 02–1p. At step two of the evaluation process, the ALJ found that Plaintiff had a combination of severe impairments including obesity (Tr. 21). At step three, the ALJ found that Plaintiff's combination of impairments did not "meet[ ] or medically equal[ ] the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 21). Similarly, at step four, the ALJ noted that Plaintiff is obese and stated that although "no treating or examining medical source has specifically attributed additional or cumulative limitations to obesity," he had considered the effects of Plaintiff's obesity in this decision (Tr 28). The ALJ then continued his RFC evaluation, stating that "due to the effects of claimant's physical impairments," Plaintiff was capable to perform sedentary work with the additional limitations, including occasionally stoop, kneel, crouch, or crawl; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; frequently handle and finger with the upper extremities, among others (Tr. 23, 28).

The ALJ also considered the effects of Plaintiff obesity in weighting the opinion of the State agency consultant Dr. Loc Kim Le, M.D. Specifically, the ALJ discounted Dr. Le's opinion that Plaintiff could perform light work, finding that sedentary exertion was more appropriate in consideration of Plaintiff's conditions, including obesity (Tr. 28). Overall, the ALJ's analysis as to Plaintiff's obesity satisfies the requirements of SSR 02–1p. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009); *Lewis*, 487 F.

15

App'x. at 483 (ALJ properly considered plaintiff's obesity in accordance with SSR 02–1p where ALJ determined plaintiff's obesity was a severe impairment but did not meet or equal a listing and then considered plaintiff's obesity in assessing the RFC). Therefore, the Court finds no error.

## **CONCLUSION**

The ALJ's decision was supported by substantial evidence and employed the proper legal standards. Accordingly, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

ORDERED in Tampa, Florida, on this 26th day of September 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE